UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KENNETH BISIG, et al.,                                                      Plaintiffs,

v.                                                   Civil Action No. 3:14-cv-36-DJH-DW

TIME WARNER CABLE, INC.,                                                    Defendant.

* * * * *

## MEMORANDUM OPINION AND ORDER

Plaintiffs Kenneth Bisig, Daniel Carter, John Doyle, Rebekah Fisher, Jason James, Thomas Kandul, John Kincade, Mark Lopez, Chris Rigsby, and Michael Sheets are former employees of Insight Communications who became employees of Defendant Time Warner Cable, Inc. after Time Warner acquired Insight. Plaintiffs had been employed as sales representatives assigned to apartment complexes in Louisville, Kentucky. Time Warner reduced the number of those representatives from fourteen to seven. Plaintiffs allege constructive discharge, fraud, negligent misrepresentation, promissory estoppel, breach of contract, and breach of the duty of good faith and fair dealing by Time Warner. (Docket No. 40) Plaintiffs have moved for summary judgment on their promissory-estoppel claim (D.N. 111), and Time Warner has moved for summary judgment on all of Plaintiffs' claims (D.N. 142). For the reasons explained below, Plaintiffs' motion will be denied, and Time Warner's motion will be granted.

## I.      BACKGROUND

Plaintiffs worked as multi-dwelling unit (MDU) sales representatives for Insight Communications. (D.N. 116-1, PageID # 2125-26; D.N. 117-1, PageID # 2218; D.N. 118-1, PageID # 2336; D.N. 119-1, PageID # 2472; D.N. 120-1, PageID # 2581-82; D.N. 121-1, PageID

# 2685; D.N. 122-1, PageID # 2779; D.N. 123-1, PageID # 2874; D.N. 124-1, PageID # 2974; D.N. 125-1, PageID # 3096-97)  Each of the plaintiffs signed and accepted an "MDU Acquisition Compensation Plan" prior to Insight's acquisition by Time Warner.  (D.N. 116-1, PageID # 2199; D.N. 117-1, PageID # 2318; D.N. 118-1, PageID # 2449; D.N. 119-1, PageID # 2561; D.N. 120-1, PageID # 2667; D.N. 121-1, PageID # 2765; D.N. 122-1, PageID # 2855; D.N. 123-1, PageID # 2955; D.N. 124-1, PageID # 3079; D.N. 125-1, PageID # 3185)  The MDU Plan, under which Plaintiffs were compensated prior to the acquisition, stated that it did not "constitute an express[] or implied contract of employment" and that the company "reserve[d] the right to terminate the sales employment relationship based on lack of performance, negligence, unexcused absenteeism, or inability to perform to sales targets."  (D.N. 142-3, PageID # 4603)

Time Warner Cable acquired Insight in March 2012.  (D.N. 126-1, PageID # 3198)  In anticipation of the acquisition, Plaintiffs took part in an electronic onboarding process in January 2012.  (*Id.*, PageID # 3232, 3230)  As part of the onboarding process, Plaintiffs received and accepted a number of Time Warner documents and policies, including one titled "Important Notice."  (*See* D.N. 142-2, PageID # 4527-56)  The "Important Notice" provided that Plaintiffs would be employed at will "unless [they were] subject to a written employment agreement signed by a company representative authorized to enter into an employment agreement."  (*Id.*, PageID # 4579)  Each of the plaintiffs electronically accepted this Notice.  (*See id.*, PageID # 4527, 4530, 4533, 4536, 4539, 4542, 4545, 4548, 4551, 4554, 4579-88)  The new Time Warner compensation plan did not go into effect until September 2013, so Plaintiffs continued to be compensated under Insight's MDU Plan until that time.  (*See* D.N. 130-1, PageID # 3616)

Gary Glauberman, Time Warner's Director of Sales, met with the MDU representatives on August 19, 2013, to present Time Warner's new compensation plan. (D.N. 133-1, PageID # 3780-81; D.N. 134-1, PageID # 3858) Under the new plan, MDU representatives became concierge relationship (CR) representatives. (D.N. 126-1, PageID # 3212, 3206) The signature pages of the Concierge Relationship Representative (CRR) Commission Plan provided that the language used in the document "in no way implie[d] or guarantee[d] continued employment" and that Time Warner was "an 'at-will' employer, meaning that [the] employment ha[d] no specified term and that the employment relationship [could] be terminated at any time." (D.N. 143-3, PageID # 4860, 4865) The signatures of each of the plaintiffs appear on these pages, dated August 19 or 20, 2013. (*See* D.N. 116-1, PageID # 2203, 2205; D.N. 117-1, PageID # 2322, 2324; D.N. 118-1, PageID # 2454-55; D.N. 119-1, PageID # 2565, 2567; D.N. 120-1, PageID # 2671, 2673; D.N. 121-1, PageID # 2768, 2770; D.N. 122-1, PageID # 2860-61; D.N. 123-1, PageID # 2959, 2961; D.N. 124-1, PageID # 3083, 3085; D.N. 125-1, PageID # 3189, 3191)

According to Plaintiffs, representatives from Time Warner made promises to them, starting before the acquisition and continuing throughout the fall of 2013, that their jobs were safe, that they would make more money, and that they would have a certain number of "A and B units"[1] in their portfolios. (*See, e.g.*, D.N. 122-1, PageID # 2787; D.N. 116-1, PageID # 2153; D.N. 119-1, PageID # 2501; D.N. 123-1, PageID # 2888, 2911; *see also* D.N. 152-8, PageID # 5348; D.N. 148-1, PageID # 4957-62, 4964, 4969) At an August 30, 2013 meeting, Beth Bennett, Time Warner's Human Resources Director, assured Plaintiffs that their jobs were not being eliminated and that none of them were "at risk." (*See* D.N. 152-8, PageID # 5341, 5348; D.N. 148-1, PageID # 4957-60)

---

[1] "A and B units" refers to apartment complexes with customers who were most likely to sign up for cable, internet, and phone services. (D.N. 116-1, PageID # 2138)

On October 9, 2013, Scott Collins, who was responsible for the CR team, met with Plaintiffs to inform them that Time Warner was reducing the number of CR representatives from fourteen to seven. (D.N. 135-1, PageID # 3883, 3920) In other words, seven of the fourteen CR representatives were going to lose their positions as CR representatives, though not necessarily their employment with Time Warner. (D.N. 138-1, PageID # 4213) Time Warner gave the fourteen CR representatives the opportunity to apply for the remaining seven positions. (*See* D.N. 126-1, PageID # 3201-02) Those who did not receive one of the seven positions would be offered jobs as direct-sales representatives, selling products to individual homeowners. (*Id.*, PageID # 3202; D.N. 129-1, PageID # 3529, 3478) An internal email suggests that Time Warner considered direct-sales positions to be a step down from MDU positions. (*See* D.N. 152-9, PageID # 5354-55)

Plaintiff Sheets resigned on October 3, 2013, before the October 9th meeting during which Plaintiffs were informed of the reduction. (D.N. 125-1, PageID # 3119-20) Plaintiffs Carter, Rigsby, Doyle, Fisher, James, Lopez, and Kincade resigned in the days following the October 9 meeting. (*See* D.N. 128-1, PageID # 3431) Plaintiff Kandul worked briefly in direct sales before resigning in December 2013. (*See* D.N. 121-1, PageID # 2713-14) Finally, Plaintiff Bisig took a direct-sales job until his resignation in April 2014. (*See* D.N. 116-1, PageID # 2145-47)

Plaintiffs filed this action in state court in late December 2013, and Time Warner removed it to this Court. (*See* D.N. 1-1; D.N. 1) Plaintiffs' first amended complaint asserts claims of constructive discharge, fraud, negligent misrepresentation, promissory estoppel, breach of contract, and breach of the duty of good faith and fair dealing. (D.N. 40) Plaintiffs seek summary judgment on their promissory-estoppel claim (D.N. 111), and Time Warner seeks

summary judgment on all of Plaintiffs' claims (D.N. 142). Following a discovery violation by Time Warner, the Court excluded its employment offer letters from evidence pursuant to Federal Rule of Civil Procedure 37(c). (D.N. 181) Therefore, Time Warner may not rely on the offer letters to support its own motion or to oppose Plaintiffs' motion, and the Court has not considered the letters in ruling on these motions.

## II. STANDARD

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* 56(c)(1). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed. Fed. R. Civ. P. 56(e)(2)-(3). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of his claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

# III.    DISCUSSION

## A.    Breach of Contract

Count V of the complaint asserts a breach-of-contract claim against Time Warner.  (D.N. 40, PageID # 492-93)   Specifically, Plaintiffs assert that they had implied-in-fact and oral contracts with Time Warner under which their jobs were secure, their jobs would not materially change, and their compensation would increase.[2]  (*Id.*)  Time Warner argues that the parties did not have an implied contract and that any claim based upon an oral contract is barred by the statute of frauds.  (D.N. 142-1, PageID # 4425-28)

### 1.    Implied Contract

"To establish a breach of contract claim in Kentucky, Plaintiff[s] must demonstrate three things: 1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract."  *Delamar v. Mogan*, No. 4:13-CV-00047-JHM, 2015 WL 225404, at *5 (W.D. Ky. Jan. 15, 2015) (citing *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009)).   "Under Kentucky law, '[a]n implied contract is one neither oral nor written—but rather, implied in fact, based on the parties' actions.'"  *Id.* at *5 n.3 (quoting *Furtula v. Univ. of Ky.*, 438 S.W.3d 303, 308 n.6 (Ky. 2014)).   An implied contract requires the agreement of the promisor to be bound.

> [A] contract may be inferred wholly or partly from such conduct as justifies the promisee in understanding that the promisor intended to make a promise.  To constitute such a contract there must, of course, be a mutual assent by the

---

[2] In their response to Time Warner's motion for summary judgment, Plaintiffs also argue that a unilateral contract existed because Time Warner's compensation plan invited their performance and demonstrated Time Warner's agreement to be bound by that performance.  (D.N. 152, PageID # 5260-61)  However, they did not raise a unilateral-contract claim in their complaint. (*See* D.N. 40, PageID # 492-93)  Plaintiffs' unilateral-contract argument is therefore not properly before the Court.  *See Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (explaining that plaintiffs may not expand their claims to assert new theories in response to summary judgment).

> parties—a meeting of minds—and also an intentional manifestation of such assent. Such manifestation may consist wholly or partly of acts, other than written or spoken words.

*Furtula*, 438 S.W.3d at 308 (quoting *Kellum v. Browning's Adm'r*, 21 S.W.2d 459, 463 (Ky. 1929)). "The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Id.* at 309 (quoting Restatement (Second) of Contracts § 19(2) (Am. Law Inst. 1981)). "[A] manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent." *Id.* (quoting Restatement (Second) of Contracts § 26). "In other words, when the recipient of a statement is informed that the maker of the statement does not intend to enter into a contract . . . the formation of a contract will not be implied." *Id.*

According to Time Warner, two documents prevent Plaintiffs from demonstrating mutual assent by the parties to enter into an employment contract. (*See* D.N. 142-1, PageID # 4426-27) First, the "Important Notice" stated: "You will be employed on an at-will basis unless you are subject to a written employment agreement signed by a company representative authorized to enter into an employment agreement." (D.N. 142-2, PageID # 4450-51, 4579) The Important Notice further stated: "Use of this website or its content does not constitute a contract of employment or imply employment for a particular term." (*Id.*, PageID # 4579) Second, an "Employment At-Will Policy" stated:

> Time Warner Cable (TWC) employees are hired for an indefinite period of time and are considered "at-will" employees. "At-will" employees are free to terminate their employment with the Company at any time. Similarly, the Company retains the legal right to terminate the employment of an "at-will" employee, at any time, for any reason, with or without cause, and with or without

notice.  This policy does not apply to employees with written contracts with the Company.

(*Id.*, PageID # 4451, 4590)  Each plaintiff electronically accepted the "Important Notice" (*id.*, PageID # 4527, 4530, 4533, 4536, 4539, 4542, 4545, 4548, 4551, 4554, 4579-88), but the proffered evidence does not clearly show that each plaintiff accepted, or even received, the "Employment At-Will Policy."  (*See id.*, PageID # 4527-56)  In her affidavit, however, Bennett states that each plaintiff electronically acknowledged the policy.  (*Id.*, PageID # 4451)

Plaintiffs have declared that the onboarding process was "unfocused and unsupervised"; that Time Warner told them that the online process was mandatory; that no one explained the meaning or significance of the documents that were submitted to them during the online process; that they do not recall getting to take any information home to read more thoroughly; that the process was presented as a formality; and that they were not required to read, but only to click and accept, the various documents.  (D.N. 148-19, PageID # 5198-99, 5201-02, 5204-05, 5207-08, 5210-11, 5213-14, 5216-19, 5222-23, 5225-26)  However, "[u]nder Kentucky law, one who signs a document after having an opportunity to read it is 'bound to the contract terms unless there was some fraud in the process of obtaining his signature.'"  *Holifield v. Beverly Health & Rehab. Servs., Inc.*, No. 3:08-CV-147-H, 2008 WL 2548104, at *3 (W.D. Ky. June 20, 2008) (quoting *Cline v. Allis-Chalmers Corp.*, 690 S.W.2d 764, 766 (Ky. Ct. App. 1985)).  Plaintiffs have not shown that they were denied an opportunity to read the Notice or that Time Warner obtained their signatures fraudulently.  Therefore, the fact that they were not required to read the documents is immaterial.  It is undisputed that Plaintiffs electronically accepted the Important Notice, which expressly provided that they were employed at will unless subject to a written employment agreement signed by an authorized company representative and that their use of the website did not constitute a contract of employment or imply employment for a particular term.

(D.N. 142-2, PageID # 4450-51, 4527, 4530, 4533, 4536, 4539, 4542, 4545, 4548, 4551, 4554, 4579-88) Thus, no contract for secure or unchanged employment was implied. *See Furtula*, 438 S.W.3d at 309; *Nork v. Fetter Printing Co.*, 738 S.W.2d 824, 825 (Ky. Ct. App. 1987) (finding at-will employment and rejecting the plaintiff's implied-contract argument where the plaintiff signed forms stating that employment could be terminated at will by the employer).

Plaintiffs rely on the MDU Acquisition Compensation Plan in support of their contract argument, as the MDU Plan remained in place for some time after Time Warner acquired Insight. (D.N. 152, PageID # 5256-57; *see* D.N. 130-1, PageID # 3616) The MDU Plan stated: "Insight reserves the right to terminate the sales employment relationship based on lack of performance, negligence, unexcused absenteeism, or inability to perform to sales targets." (D.N. 142-3, PageID # 4603) According to Plaintiffs, this language created a contract not to terminate them except for cause. (D.N. 152, PageID # 5257) Plaintiffs avoid, however, the preceding sentence in the MDU Plan: "This Pay Plan Detail does not constitute an express[] or implied contract of employment." (D.N. 142-3, PageID # 4603) Each plaintiff signed and accepted this disclaimer (D.N. 116-1, PageID # 2199; D.N. 117-1, PageID # 2318; D.N. 118-1, PageID # 2449; D.N. 119-1, PageID # 2561; D.N. 120-1, PageID # 2667; D.N. 121-1, PageID # 2765; D.N. 122-1, PageID # 2855; D.N. 123-1, PageID # 2955; D.N. 124-1, PageID # 3079; D.N. 125-1, PageID # 3185), which defeats Plaintiffs' argument for implied contract on this basis. *See Furtula*, 438 S.W.3d at 309.

Further, Plaintiffs argue that the MDU Plan and the CRR Commission Plan alter any at-will status that may have existed because both plans established the rate of commissions that sales representatives would make, and established disciplinary procedures for when their performance was not satisfactory. (D.N. 152, PageID # 5257-58; *see* D.N. 142-3, PageID #

4596-4600; D.N. 143-3, PageID # 4861-62, 4864)  But employment manuals or handbooks that set performance standards do not amount to contracts that supersede plain "at-will" language in a document the employee signed.  *See McCart v. Brown-Forman Corp.*, 713 F. Supp. 981, 983 (W.D. Ky. 1988); *see also Nork*, 738 S.W.2d at 826-27 (holding that employment was at will and no contract existed where manual stated that employment would become permanent after ninety days and that continued employment was conditioned on successful performance).  And the CRR Plan expressly provided that the language used "in no way implie[d] or guarantee[d] continued employment" and that Plaintiffs were at-will employees: "I understand that Time Warner Cable is an 'at-will' employer, meaning that my employment has no specified term and that the employment relationship may be terminated at any time at the will of either party.  This policy can be reviewed, revised[,] and rescinded at the discretion of the company."  (D.N. 143-3, PageID # 4860, 4865)  Each plaintiff received a copy of the CRR Plan, including these provisions, and the signature of each plaintiff appears on the plan documents.[3]  (D.N. 116-1, PageID # 2203, 2205; D.N. 117-1, PageID # 2322, 2324; D.N. 118-1, PageID # 2454-55; D.N. 119-1, PageID # 2565, 2567; D.N. 120-1, PageID # 2671, 2673; D.N. 121-1, PageID # 2768, 2770; D.N. 122-1, PageID # 2860-61; D.N. 123-1, PageID # 2959, 2961; D.N. 124-1, PageID # 3083, 3085; D.N. 125-1, PageID # 3189, 3191)  The commissions and disciplinary procedures in the CRR Plan do not supersede its disclaimer and at-will language, and Plaintiffs' implied-

---

[3] Notwithstanding the documents bearing his signature (D.N. 125-1, PageID # 3189, 3191), Plaintiff Sheets denies signing the CRR Plan.  (*Id.*, PageID # 3105)  This dispute, however, is immaterial in light of the other undisputed facts in this case.  Sheets does not dispute that he accepted or signed (1) the "Important Notice" providing that he was an at-will employee absent a written employment agreement signed by an authorized company representative and that use of the website did not constitute a contract of employment and (2) an MDU target-income analysis stating that it did not constitute an express or implied employment contract.  (*See* D.N. 142-2, PageID # 4554, 4582; D.N. 148-19, PageID # 5224-26; D.N. 125-1, PageID # 3102, 3187)  These signed acknowledgments are sufficient to defeat Sheets's implied-contract argument.  *See Furtula*, 438 S.W.3d at 309; *Nork*, 738 S.W.2d at 825.

contract argument fails on this basis as well. *See McCart*, 713 F. Supp. at 983; *Furtula*, 438 S.W.3d at 309.

Plaintiffs' reliance on *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354 (Ky. 2005), is similarly misplaced. In *Parts Depot*, the Kentucky Supreme Court explained: "Once an employer establishes an express personnel policy and the employee continues to work while the policy remains in effect, the policy is deemed an implied contract for so long as it remains in effect." *Id.* at 363. The court was careful, however, to distinguish such a case from one in which a disclaimer made clear that a policy was not a contract of employment. *See id.* at 363-64. In this case, the MDU Plan and the CRR Plan made clear that they did not constitute contracts for continued employment (D.N. 142-3, PageID # 4603; D.N. 143-3, PageID # 4860), and that disclaimer bars Plaintiffs' claim that Time Warner agreed to terminate them only for cause. *See Parts Depot*, 170 S.W.3d at 363.

Plaintiffs also appear to allege in their complaint that the parties had an implied contract for increased compensation. (*See* D.N. 40, PageID # 492-93) The parties' briefs focus on the alleged implied contract for continued employment. In any event, the Court's conclusion that Plaintiffs were at-will employees precludes any argument that the parties had an implied contract to increase Plaintiffs' compensation. "Kentucky courts 'have held that the at-will employment relationship may be modified, without additional consideration, if the employer clearly states an intention to do so.'" *Dunn v. Gordon Food Servs., Inc.*, 780 F. Supp. 2d 570, 577 (W.D. Ky. 2011) (quoting *Hines v. Elf Atochem N. Am., Inc.*, 813 F. Supp. 550, 552 (W.D. Ky. 1993)). Time Warner clearly stated its intention to change Plaintiffs' compensation at a meeting that took place in Louisville on August 19, 2013. (*See* D.N 134-1, PageID # 3858; D.N. 136-1, PageID #

3973; D.N. 126-1, PageID # 3203)  All of the plaintiffs except for James[4] were present at that meeting.  (*See* D.N. 116-1, PageID # 2133; D.N. 117-1, PageID # 2223; D.N. 118-1, PageID # 2347; D.N. 119-1, PageID # 2485-86; D.N. 121-1, PageID # 2693-94; D.N. 122-1, PageID # 2790; D.N. 123-1, PageID # 2881; D.N. 124-1, PageID # 2983; D.N. 125-1, PageID # 3106) Thus, Plaintiffs have not shown the existence of an implied contract for secure employment or increased compensation in this case.

### 2. Oral Contract

Plaintiffs also argue that various oral promises made by Time Warner created a contract of continued employment.  (D.N. 152, PageID # 5251)  Time Warner responds that the oral promises do not create a contract, but even if they did, the statute of frauds would bar Plaintiffs' claim.  (D.N. 142-1, PageID # 4427-28)

Kentucky courts have recognized that parties may enter into an oral contract modifying an employee's at-will employment status.  *See, e.g., Hammond v. Heritage Commc'ns, Inc.*, 756 S.W.2d 152, 154 (Ky. Ct. App. 1988).  However, employer-handbook provisions stating that only certain persons have the authority, in writing, to modify an employee's at-will status will prevent oral modifications to that status by unauthorized persons.  *See Wells v. Huish Detergents, Inc.*, 19 F. App'x 168, 175-76 (6th Cir. 2001).  In this case, the Important Notice communicated that Plaintiffs' at-will status could only be modified by "a written employment agreement signed by a company representative authorized to enter into an employment agreement."  (D.N. 142-2, PageID # 4579)  Each plaintiff electronically accepted this notice.  (*Id.*, PageID # 4527, 4530,

---

[4] James was not present at the meeting because he was on scheduled time off.  (D.N. 120-1, PageID # 2604)  Nonetheless, he was aware of Time Warner's plan to change his compensation because he reviewed and signed the CRR Plan that changed his commission.  (*See id.*, PageID # 2590, 2671)

4533, 4536, 4539, 4542, 4545, 4548, 4551, 4554, 4579-88) Plaintiffs were therefore on notice that their at-will status could not be modified orally.

But Plaintiffs' oral-contract argument for continued employment fails for another reason as well. Even viewed in the light most favorable to Plaintiffs, the oral promises do not reflect "a clear statement not to terminate without cause." *Turner v. Leggett & Platt, Inc.*, No. 5:08-CV-00113-TBR, 2010 WL 1049849, at *5 (W.D. Ky. Mar. 19, 2010). Time Warner employees allegedly assured Plaintiffs that their jobs were safe and that there was a need for all fourteen sales representatives in Louisville. (*See, e.g.*, D.N. 122-1, PageID # 2787; D.N. 123-1, PageID # 2911; D.N. 119-1, PageID # 2479; D.N. 148-1, PageID # 4958-60) While these oral statements may have implied that Plaintiffs would not lose their jobs because of the Time Warner takeover, there was no assurance that Plaintiffs "would not be fired . . . for any other reason or that cause was required in order to terminate." *See Turner*, 2010 WL 1049849, at *5. Therefore, Plaintiffs have not shown that an oral agreement for continued employment existed between the parties. *See id.*

Plaintiffs' argument that Time Warner's oral promises created a contract for increased compensation also fails, because their at-will employment status gave Time Warner the right to modify their compensation. *See Dunn*, 780 F. Supp. 2d at 577; *supra* Section III.A.1. Finally, because no oral contract existed between Time Warner and Plaintiffs, the Court need not address the statute of frauds. *See Cuppy v. Gen. Accident Fire & Life Assurance Corp.*, 378 S.W.2d 629, 632-33 (Ky. 1964).

In sum, Plaintiffs have not shown that they had an implied or oral contract with Time Warner for continued employment or increased compensation. As a result, their breach-of-

contract claim fails, *see Delamar*, 2015 WL 225404, at *5, and Time Warner is entitled to summary judgment on this claim.

**B.      Breach of the Duty of Good Faith and Fair Dealing**

Plaintiffs claim breach of the duty of good faith and fair dealing in Count VI of their complaint.  (D.N. 40, PageID # 493)  "Within every contract, there is an implied covenant of good faith and fair dealing, and contracts impose on the parties thereto a duty to do everything necessary to carry them out."  *Farmers Bank & Tr. Co. of Georgetown, Ky. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005).  But Plaintiffs have failed to show the existence of a contract in this case.  *See supra* Section III.A.  Without a contract, there can be no breach of the duty of good faith and fair dealing.  *See Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 791 (W.D. Ky. 2001) ("In the absence of a contract, no such covenant [of good faith and fair dealing] applies . . . .").  The Court will therefore grant summary judgment in favor of Time Warner on this claim.

**C.      Fraud**

In Count II of their complaint, Plaintiffs assert claims of fraud, alleging that Time Warner "made multiple material false representations" and "intentionally withheld the truth from Plaintiffs."  (D.N. 40, PageID # 491)  The fraud claims fall into two categories: fraud by misrepresentation and fraud by omission.  *See Sadler v. Advanced Bionics, Inc.*, 929 F. Supp. 2d 670, 682 (W.D. Ky. 2013) (distinguishing the two claims).

**1.      Fraud by Misrepresentation**

Fraud-by-misrepresentation claims require proof that

(1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity; (4) the defendant intended to induce the plaintiff to act upon the misrepresentation; (5) the plaintiff

14

reasonably relied upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff.

*Id.* (quoting *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011)). "The representation in question 'must relate to a past or present material fact.'" *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 730 F. Supp. 2d 683, 696 (W.D. Ky. 2010) (quoting *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009)). "Predictions and statements of opinion generally cannot form the basis of a fraud claim; 'forward-looking recommendations and opinions are not actionable . . . merely because they are misguided, imprudent[,] or overly optimistic.'" *Id.* (quoting *Flegles, Inc.*, 289 S.W.3d at 549). "Kentucky recognizes an exception to this rule against predictions where the proffered opinion 'either incorporates falsified past or present facts or is so contrary to the true current state of affairs that the purported prediction is an obvious sham.'" *Republic Bank & Tr. Co. v. Bear, Stearns & Co., Inc.*, 707 F. Supp. 2d 702, 708 (W.D. Ky. 2010) (quoting *Flegles, Inc.*, 289 S.W.3d at 549). For instance, one who "falsely represents his opinion of a future happening" could be subject to liability. *Flegles, Inc.*, 289 S.W.3d at 549 (quoting *Ky. Elec. Dev. Co.'s Receiver v. Head*, 68 S.W.2d 1, 3 (Ky. 1934)).

"For a representation to qualify as a fraudulent misrepresentation, the party making the representation—at the time of making it—must know the representation is false or make it recklessly without any knowledge of its truth." *PCR Contractors, Inc. v. Danial*, 354 S.W.3d 610, 615 (Ky. Ct. App. 2011). "This rule applies equally to representations of a declarant's present intent to perform a future promise." *Id.* "Thus, [i]f the statement is honestly made and the intention in fact exists, one who acts in justifiable reliance upon it cannot maintain an action of deceit if the maker for any reason changes his mind and fails or refuses to carry his expressed intention into effect." *Id.* (quoting Restatement (Second) of Torts § 530 cmt. b (Am. Law Inst. 1976)).

Time Warner argues that it did not knowingly or recklessly make any material misrepresentations; it did not intend to induce Plaintiffs to act on any misrepresentation; Plaintiffs could not have reasonably relied upon any misrepresentation; and Plaintiffs did not rely to their detriment in any event. (D.N. 142-1, PageID # 4429-35) Plaintiffs have testified that Time Warner representatives promised them job security, increased pay, and a certain number of A and B units. (*See, e.g.*, D.N. 122-1, PageID # 2787; D.N. 116-1, PageID # 2153; D.N. 119-1, PageID # 2501; D.N. 123-1, PageID # 2888, 2911; *see also* D.N. 152-8, PageID # 5341, 5348; D.N. 148-1, PageID # 4957-62, 4964, 4969) But in fact, at least seven of the MDU representatives were going to lose their positions, according to Time Warner's human resources director. (D.N. 138-1, PageID # 4213, 4162) In addition, the evidence shows that the Time Warner representatives making these promises knew that the new compensation plan would adversely affect Plaintiffs. (*See* D.N. 148-9, PageID # 5107; D.N. 148-7, PageID # 5101; D.N. 148-11, PageID # 5115-16) And Time Warner representatives assured Plaintiffs of their job security after a proposal was made to eliminate two of the positions and before Time Warner finally determined the number of CR representatives the Louisville market would support. (*See* D.N. 148-1, PageID # 4954, 4957-60; D.N. 135-1, PageID # 3964-65, 3905; D.N. 128-1, PageID # 3410) Based on this evidence, the Court concludes that Plaintiffs have presented a genuine issue of material fact as to whether Time Warner knowingly or recklessly made false representations to them.

However, Plaintiffs must establish a genuine issue of material fact as to each element of their claim in order to survive summary judgment. *See Celotex Corp.*, 477 U.S. at 322-23. The Kentucky Court of Appeals has held that "as a matter of law, a party may not rely on oral representations that conflict with written disclaimers to the contrary which the complaining party

earlier specifically acknowledged in writing." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 640-41 (Ky. Ct. App. 2003). This Court has applied that rule in the context of a fraud-by-misrepresentation claim. *See Turner*, 2010 WL 1049849, at \*6-7. In *Turner*, the plaintiff argued that the defendant's representatives assured him that he would have a "long career" with the defendant and promised him a job for a certain period of time. *Id.* at \*6. After he was terminated, the plaintiff brought a claim for fraud by misrepresentation, and the Court granted summary judgment in favor of the defendant. *Id.* at \*3, \*6-7, \*12. The Court reasoned that the plaintiff could not prevail because he had signed a job application with a written provision describing his at-will employment status; thus, he could not have reasonably relied on the defendant's statements. *Id.* at \*7.

As in *Turner*, each of the plaintiffs in this case accepted the Important Notice, which stated that they were employed at will absent a written employment agreement signed by an authorized company representative and that use of the website did not constitute a contract of employment. (D.N. 142-2, PageID # 4450-51, 4527, 4530, 4533, 4536, 4539, 4542, 4545, 4548, 4551, 4554, 4579-88) At least nine of the plaintiffs also signed the CRR Plan providing that Time Warner was an at-will employer that could terminate the employment relationship at any time. (D.N. 116-1, PageID # 2205; D.N. 117-1, PageID # 2324; D.N. 118-1, PageID # 2455; D.N. 119-1, PageID # 2567; D.N. 120-1, PageID # 2673; D.N. 121-1, PageID # 2770; D.N. 122-1, PageID # 2861; D.N. 123-1, PageID # 2961; D.N. 124-1, PageID # 3085; D.N. 125-1, PageID # 3191) *See supra* Section III.A.1. In light of these statements regarding at-will employment, Plaintiffs could not have reasonably relied on Time Warner's communications that their jobs were secure, they would earn better pay, and they would have new sales portfolios including 5,000 A and B units. *See Turner*, 2010 WL 1049849, at \*7; *see also Dunn*, 780 F. Supp. 2d at

577 (explaining that an at-will employment relationship may be modified by the employer). Because Plaintiffs have not shown reasonable reliance, their fraud-by-misrepresentation claim fails.

## 2.    Fraud by Omission

To prevail on a fraud-by-omission claim, Plaintiffs must prove: "(1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence." *Sadler*, 929 F. Supp. 2d at 682 (quoting *Giddings & Lewis, Inc.*, 348 S.W.3d at 747). "In addition, [Plaintiffs'] reliance must be reasonable." *Mitchell v. Gen. Motors LLC*, No. 3:13-CV-498-CRS, 2014 WL 1319519, at *12 (W.D. Ky. Mar. 31, 2014) (citing *Republic Bank & Tr. Co.*, 707 F. Supp. 2d at 710).

Plaintiffs' claim again fails for lack of reasonable reliance. Under Kentucky law, "a party may not rely on oral representations that conflict with written disclaimers to the contrary which the complaining party earlier specifically acknowledged in writing."[5] *Rivermont Inn, Inc.*, 113 S.W.3d at 640. As discussed above, Plaintiffs electronically accepted a document stating that they were at-will employees and that their use of the website did not constitute an employment contract. Thus, they could not have reasonably relied on Time Warner's statements regarding secure employment, better pay, and new sales portfolios. *See supra* Section III.C.1. The Court will therefore grant Time Warner summary judgment on both of Plaintiffs' fraud claims.

---

[5] Although the Kentucky Court of Appeals announced this rule within the context of a fraud-by-misrepresentation claim, the court's analysis of a fraud-by-omission claim in the same case suggests that the reasonable-reliance requirement applies to both types of claims. *See Rivermont Inn, Inc.*, 113 S.W.3d at 640-41. In addition, this Court has listed reasonable reliance as a required element of fraud-by-omission claims. *See Mitchell*, 2014 WL 1319519, at *12; *Republic Bank & Tr. Co.*, 707 F. Supp. 2d at 710.

### D.    Negligent Misrepresentation

Plaintiffs also bring a negligent-misrepresentation claim based on the allegedly false information Time Warner supplied to them about their employment.  (D.N. 40, PageID # 491-92)  Kentucky has adopted the elements of negligent misrepresentation from the Restatement (Second) of Torts:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justified reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*C.A.F. & Assocs., LLC v. Portage, Inc.*, 913 F. Supp. 2d 333, 352 (W.D. Ky. 2012) (quoting *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580 (Ky. 2004)).  "[A] negligent misrepresentation claim requires proof of an actionable misrepresentation, i.e. 'false information.'"  *Id.* (quoting *Flegles, Inc.*, 289 S.W.3d at 553).  "[I]mplicit misrepresentations . . . are not enough to state a prima facie case as to this particular tort because negligent misrepresentation requires an affirmative false statement."  *Id.* (quoting *Giddings & Lewis, Inc.*, 348 S.W.3d at 746).  "[A] party's intent to perform a promise or agreement cannot form the basis of a negligent misrepresentation claim."  *KSA Enters., Inc. v. Branch Banking & Tr. Co.*, No. 5:14-CV-00182, 2015 WL 5611655, at *7 (W.D. Ky. Sept. 23, 2015) (quoting *PCR Contractors, Inc.*, 354 S.W.3d at 619).

Time Warner argues that the alleged promises at issue are "statements of future intent" that cannot support a claim for negligent misrepresentation and that even if the Court found that it negligently supplied false information to Plaintiffs, their negligent-misrepresentation claim would fail because they could not have reasonably relied on such information.  (D.N. 142-1, PageID # 4438-39)  Plaintiffs cite *C.A.F. & Associates* in support of their claim.  (D.N. 152,

PageID # 5279-80)  In *C.A.F. & Associates*, a memorandum of understanding (MOU) between the defendants, Portage and PRS, and the plaintiff, C.A.F. & Associates, provided that Portage and PRS would hire twenty C.A.F. employees.  913 F. Supp. 2d at 337-38.  The MOU also included a date by which the twenty employees would be hired, a minimum term of duration for their employment, and a concluding statement that the MOU constituted "a general description of the parties' intentions."  *Id.* at 338-39.  The parties did not dispute that "subcontracts were never entered into" for the twenty C.A.F. employees.  *Id.* at 339.  C.A.F. sued Portage and PRS for negligent misrepresentation "insofar as [d]efendants failed to exercise ordinary and reasonable care in representing to CAF they would hire [the twenty C.A.F. employees] when they should have known those representations were false."  *Id.* at 340.

Portage and PRS moved for summary judgment, and the Court denied their motion, concluding that C.A.F. had established a prima facie case of negligent misrepresentation.  *Id.* at 352-53.  The Court reasoned that the language in the parties' MOU was "sufficient evidence of Defendants' affirmative misrepresentations."  *Id.* at 352.  Further, the Court noted that "[w]hether Defendants 'intended' to perform [did] not affect whether they failed to exercise reasonable care in communicating a false representation to CAF."  *Id.*  And "whether [C.A.F.'s] reliance on Defendants' representations was reasonable [was a] question of fact for the jury and, therefore, [could not] establish a basis for summary judgment."  *Id.* at 353.

In this case, Plaintiffs have shown that Time Warner presented them with information that was false.  For example, Plaintiffs have testified that Time Warner representatives told them not only that they would all keep their jobs, but also that they would make more money.  (*See, e.g.*, D.N. 122-1, PageID # 2787; D.N. 116-1, PageID # 2153; D.N. 119-1, PageID # 2501; D.N. 123-1, PageID # 2888, 2911)  Beth Bennett, Time Warner's Human Resources Director, gave a

PowerPoint presentation to the MDU representatives, including Plaintiffs, in which she stated that "MDU jobs are not being eliminated" and "[t]here are not fewer positions." (D.N. 152-8, PageID # 5341, 5348)  A transcript of the August 30, 2013 meeting reveals that Bennett assured Plaintiffs that the number of MDU representatives was fourteen and that "there was no one at risk." (D.N. 148-1, PageID # 4954, 4957-59)  Bennett also stated during the meeting, as "the HR person," that "no one in [the MDU] group was . . . being touched." (*Id.*, PageID # 4960)  In fact, half of the MDU representative positions (later renamed CR representative positions) were eliminated. (D.N. 126-1, PageID # 3212, 3206)  The Court finds this evidence sufficient to show that Time Warner, in the course of its business, supplied Plaintiffs with false information.  *See C.A.F. & Assocs., LLC*, 913 F. Supp. 2d at 352.  Plaintiffs have also shown a failure to exercise reasonable care, as they have pointed to evidence that Bennett assured them that all fourteen positions were safe without confirming that number with Scott Collins, who was responsible for the MDU team in Louisville. (D.N. 138-1, PageID # 4178-79; *see* D.N. 135-1, PageID # 3883)  This conduct may well be reproachable.  It is not however actionable in the case at hand.

In order to avoid summary judgment, Plaintiffs must establish a genuine issue of material fact with respect to each element of their negligent-misrepresentation claim.  *See Celotex Corp.*, 477 U.S. at 322-23.  As with their fraud claims, Plaintiffs are unable to show that they reasonably relied on Time Warner's misrepresentations.  Generally, the issue of whether reliance was reasonable is a question of fact for the jury.  *See SBAV, LP v. Porter Bancorp, Inc.*, No. 3:13-CV-710, 2014 WL 1257018, at *9 (W.D. Ky. Mar. 26, 2014); *C.A.F. & Assocs., LLC*, 913 F. Supp. 2d at 353.  However, in Kentucky, it is unreasonable as a matter of law for Plaintiffs to rely on "oral representations that conflict with written disclaimers to the contrary which [they] earlier specifically acknowledged in writing." *Rivermont Inn, Inc.*, 113 S.W.3d at 640.  Time

Warner has shown that Plaintiffs acknowledged written disclaimers that they were at-will employees and that no employment contract was implied.  *See supra* Section III.C.  These at-will disclaimers directly contradict the oral representations of secure employment, better pay, and new sales portfolios upon which Plaintiffs claim to have relied.  *See Dunn*, 780 F. Supp. 2d at 577 (explaining that an at-will employment relationship may be modified by the employer).  The Court will therefore grant Time Warner summary judgment on Plaintiffs' negligent-misrepresentation claim.

The Court thus concludes that Plaintiffs' claims for fraud and negligent misrepresentation fail as a matter of law.  The Court finds it troubling that when applied to the facts of this case, Kentucky law appears to permit—even reward—outright deception.

### E.      Promissory Estoppel

Both parties seek summary judgment on Plaintiffs' promissory-estoppel claim.  As a threshold matter, the parties dispute whether the statute of frauds bars Plaintiffs' claim.  The Kentucky statute of frauds provides:

> No action shall be brought to charge any person . . . [u]pon any agreement that is not to be performed within one year from the making thereof . . . unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent.

Ky. Rev. Stat. § 371.010(7).  Time Warner argues that Plaintiffs are barred from pursuing a claim based on its oral promises of job security because such promises could not have been performed within one year.  (D.N. 143, PageID # 4695)  Plaintiffs respond that the promises could have been performed within one year because Time Warner could have hired them as promised at any time.  (D.N. 148, PageID # 4950-51)

Assuming that the statute of frauds applies, it would not bar Plaintiffs' promissory-estoppel claim. In *United Parcel Service Co. v. Rickert*, the Kentucky Supreme Court stated: "Kentucky is with the majority of states in holding that the statute of frauds is not a bar to a fraud or promissory estoppel claim based on an oral promise of indefinite employment." 996 S.W.2d 464, 471 (Ky. 1999). The court has since clarified that the above statement was only dicta and that "[a]ll that may be deduced from *Rickert* concerning the statute of frauds is that in a fraud or promissory estoppel action involving a promise of employment, it does not act as a bar." *Sawyer v. Mills*, 295 S.W.3d 79, 90 (Ky. 2009) (quoting *Farmers Bank & Tr. Co. of Georgetown, Ky.*, 171 S.W.3d at 10). The present action is a promissory-estoppel action involving a promise of employment. Therefore, to the extent that the statute of frauds might apply to the promises here, it does not bar Plaintiffs' claim. The federal cases Time Warner cites did not involve promises of employment and are therefore distinguishable. *See 859 Boutique Fitness LLC v. Cyclebar Franchising, LLC*, No. 5:16-cv-018-KKC, 2016 WL 2599112, at *2 (E.D. Ky. May 5, 2016) (noting the Kentucky Supreme Court's narrowing of *Rickert* and holding that "promissory estoppel cannot be used to enforce an agreement that is left otherwise unenforceable by Kentucky's statute of frauds" in case where plaintiff sought to enforce promise to execute franchise agreement); *In re Ziegler*, No. 12-50915, 2013 WL 66078, at *3-4 (E.D. Ky. Jan. 4, 2013) (noting the Kentucky Supreme Court's clarification of *Rickert* and concluding that promissory estoppel could not defeat statute of frauds where plaintiffs sought to enforce alleged modification of payment terms); *Equiventure, LLC v. Wheat*, No. 5:09-CV-93, 2012 WL 2089532, at *7-8 (W.D. Ky. June 8, 2012) (holding that promissory estoppel could not be utilized to enforce promise to make plaintiffs the sole agent for the sale of defendants' products where "[p]laintiffs . . . acknowledged that any oral contract between the parties could not be

enforced because of the statute of frauds").  The Court thus rejects Time Warner's argument that the statute of frauds bars Plaintiffs' claim.

"Under Kentucky law, the four elements of promissory estoppel are '(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promise[e]; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise.'"  *Derby City Capital, LLC v. Trinity HR Servs.*, 949 F. Supp. 2d 712, 728 (W.D. Ky. 2013) (quoting *Bergman v. Baptist Healthcare Sys., Inc.*, 344 F. Supp. 2d 998, 1003 (W.D. Ky. 2004)).  The parties dispute whether reasonable reliance is also an element of promissory estoppel.  Time Warner cites *Rivermont Inn, Inc.*, where the Kentucky Court of Appeals explained that promissory estoppel could be invoked "when a party reasonably relies on a statement of another and materially changes his position in reliance on the statement." 113 S.W.3d at 642.  As noted by another judge in this district, however, the Sixth Circuit and the Kentucky Supreme Court agreed that the Restatement definition of promissory estoppel governs such claims in this state, and the Restatement does not require that the promisee's reliance be reasonable.  *See TWB Distribution, LLC v. BBL, Inc.*, No. 3:08-CV-509-S, 2009 WL 5103604, at *5-6 (W.D. Ky. Dec. 17, 2009) (citations omitted).  Nonetheless, Judge Simpson concluded that "[w]hile reasonable reliance is not an essential element of the prima facie case, reasonableness warrants significant consideration in deciding whether enforcement of a promise is necessary to avoid injustice."  *Id.* at *6.  The Court agrees and concludes that reasonable reliance is not a required element of promissory estoppel, but it is an appropriate consideration in deciding the "injustice" element.

Time Warner argues that Plaintiffs' promissory-estoppel claim fails because Plaintiffs were at-will employees.  (D.N. 143, PageID # 4685)  The Sixth Circuit has held that an

employee's at-will status precludes his or her promissory-estoppel claim under Kentucky law. *See McDonald v. Webasto Roof Sys., Inc.*, 570 F. App'x 474, 477 (6th Cir. 2014) (citing *Jackson v. JB Hunt Transp., Inc.*, 384 S.W.3d 177, 185 (Ky. Ct. App. 2012)).

"Generally, in the absence of a specific contractual provision to the contrary, employment in Kentucky is terminable at-will, meaning that an employer may ordinarily discharge an employee 'for good cause, for no cause, or for a cause that some might view as morally indefensible.'" *Street v. U.S. Corrugated, Inc.*, No. 1:08-CV-00153, 2011 WL 304568, at *4 (W.D. Ky. Jan. 25, 2011) (quoting *Miracle v. Bell Cty. Emergency Med. Servs.*, 237 S.W.3d 555, 558 (Ky. Ct. App. 2007)). "In sum, '[a]bsent a clear statement not to terminate without cause, the assumption is that the parties intended to enter into an ordinary employment relationship, terminable at the will of either party.'" *Id.* (quoting *McNutt v. Mediplex of Ky., Inc.*, 836 F. Supp. 419, 421 (W.D. Ky. 1993)).

The Court has already concluded that Plaintiffs were at-will employees, as the evidence shows that Plaintiffs did not have an employment contract with Time Warner and that Time Warner notified Plaintiffs that they were employed at will. *See sup*ra Section III.A. Thus, their promissory-estoppel claim fails, *see McDonald*, 570 F. App'x at 477, and the Court will grant Time Warner summary judgment on this claim.

### F.    Constructive Discharge

Finally, Plaintiffs bring a claim for constructive discharge. (D.N. 40, PageID # 490-91) But "[c]onstructive discharge, even if shown, does not support an independent cause of action. Rather, it is a means of proving an element of a . . . discrimination claim, or it could be evidence of a hostile work environment." *Sullivan v. Paycor, Inc.*, No. 3:13-CV-00028-H, 2013 WL 2286069, at *3 (W.D. Ky. May 23, 2013); *see also Wilson v. Dana Corp.*, 210 F. Supp. 2d 867,

888 (W.D. Ky. 2002) ("Constructive discharge from employment is not itself a cause of action. First there must be an underlying action for employment discrimination."). Plaintiffs have not asserted discrimination here. (*See* D.N. 40) Their constructive-discharge claim will therefore be dismissed.[6] *See Sullivan*, 2013 WL 2286069, at *3.

## IV.   CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Plaintiffs' motion for partial summary judgment (D.N. 111) is **DENIED**.

(2)     Time Warner Cable, Inc.'s motion for summary judgment (D.N. 142) is **GRANTED.**

(3)     A separate judgment will be entered this date.

March 23, 2018

**David J. Hale, Judge**
**United States District Court**

---

[6] Plaintiffs cite multiple cases for the proposition that Kentucky courts treat constructive discharge "as an independent cause of action." (D.N. 152, PageID # 5266) However, the cited cases either do not support Plaintiffs' position or involved claims of discrimination or hostile work environment. *See Pearce v. Whitenack*, 440 S.W.3d 392, 400 (Ky. Ct. App. 2014) (discussing constructive discharge as a means of avoiding a finding that the plaintiff voluntarily resigned); *Burton v. Ky. State Police*, 341 S.W.3d 589, 593 n.10 (Ky. Ct. App. 2011) (declining to discuss constructive-discharge claim because the plaintiff did not address it on appeal); *Louisville-Jefferson Cty. Metro Gov't v. Martin*, Nos. 2007-CA-001629-MR, 2007-CA-001803-MR, 2009 WL 1636270, at *3-4 (Ky. Ct. App. June 12, 2009) (recognizing constructive discharge as an adverse employment action that might support retaliation claim in a case where no constructive-discharge claim was brought); *Custom Tool & Mfg. Co. v. Fuller*, Nos. 2005-CA-000857-MR, 2005-CA-001078-MR, 2007 WL 121827, at *4, *7 (Ky. Ct. App. Jan. 19, 2007) (sustaining jury verdict of constructive discharge in case where jury also found a hostile work environment); *Relford v. Lexington-Fayette Urban Cty. Gov't Civil Serv. Comm'n*, No. 2002-CA-000045-MR, 2003 WL 21126798, at *2, *6 (Ky. Ct. App. May 16, 2003) (affirming trial court's holding that the plaintiff voluntarily resigned and there was no constructive discharge).